UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICAIAH ALLEN, #03-B-1906,

        Petitioner,

        -v-                        07-CV-0023(MAT)
                                             **ORDER**

STATE OF NEW YORK,

        Respondent.

## I.   Introduction

*Pro se* petitioner Micaiah Allen ("petitioner") filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Attempted Murder in the Second Degree (N.Y. Penal L. § 125.25[1]; 110.00)); Assault in the First Degree (Penal L. § 120.10[1]); Criminal Possession of a Weapon in the Second Degree (former Penal L. § 265.03[2]); and Criminal Possession of a Weapon in the Third Degree (Penal L. § 265.02[1]). Petitioner was convicted following a jury trial before Justice Richard Kloch in Erie County Supreme Court on July 17, 2003. He was subsequently sentenced to concurrent terms of imprisonment, the longest of which is twenty-five years with five years of post-release supervision. Sentencing Mins. 21.

## II.  Factual Background and Procedural History

### A.   The Trial

#### 1.   Testimony of Nicomy Welch

On the evening of May 20, 2002, Nicomy Welch ("Welch") was picked up by Kareem Kirkland ("Kirkland" or "the victim"), Ernest

Peace ("Peace") and his girlfriend, Glenese Hart ("Hart"). The group planned on just "chill[ing] out" that night. Welch had met Kirkland the night before at a club in Buffalo. T. 236-38.[1]

The group drove in Hart's minivan to the YMCA, where Kirkland was supposed to "meet somebody." Earlier, Welch noticed that the victim was carrying a large sum of cash. T. 239-40. Hart parked across the street from the facility and waited until a white minivan pulled into the parking lot. At that point, Kirkland, said, "there's my man," approached the vehicle, and got inside. T. 240-41. A few minutes later, Welch observed Kirkland jumping out of the van and running. Then, she said, "someone else got out the van, chased him [Kirkland], started shooting at him." T. 243. Several shots were fired, one of which hit Hart's van. T. 252. Welch then watched petitioner get into the white minivan and flee the YMCA parking lot. T. 246. She did not see anyone else in the van except petitioner. T. 250.

Welch, Hart, and Peace drove out of the parking lot, drove around the block, and returned to the YMCA. T. 248-50. When they returned, they saw that Kirkland was badly injured. Welch got out to assist him, because he was "moving around" and "frantic". At that time, Buffalo Police Officers had arrived. T. 250.

Welch gave a description of petitioner to the police, including his height, build, and skin complexion. She also recalled

---

[1] Citations to "T.__" refer to the trial transcript.

that he was wearing a green and dark-colored hooded sweatshirt, and light jeans. T. 255. Welch was then taken to police headquarters to provide a statement. While she was approaching the elevator with an officer, she saw petitioner in handcuffs. Startled, Welch told the accompanying police officer that she just saw the shooter, who continued to escort her to the Homicide Office. Welch was not asked to identify the petitioner. T. 259-60.

### 2. Testimony of Officer Molly Sanford

Police Officer Molly Sanford ("Sanford") was on duty the night of May 20, 2002, when she received a call of a person shot at the YMCA at East Ferry Street and Jefferson Avenue in the City of Buffalo. T. 187-88. Sanford headed to the shooting location with her lights and siren on. While en route, she received a call that a white Dodge Caravan had just left the scene. T. 188-89. When she entered the intersection at Fillmore Avenue and Best Street, her patrol car was nearly hit by a minivan that matched the description of the getaway vehicle. T. 189. The white minivan then took off, speeding down the street at 50-60 miles per hour, while Sanford followed with her lights and siren on. T. 190-91. The van drove through stop signs and red lights for several blocks, ending at a dead end. After he stopped the vehicle, petitioner exited the car and took a few quick steps. T. 192-94. He was then apprehended. It took five officers to handcuff petitioner. T. 195.

### 3. Petitioner's Statement to Police

While at the police station, a detective spoke with petitioner, and read him his <u>Miranda</u> rights from a card. Petitioner said that he understood each of his rights, and initialed each line and then signed the <u>Miranda</u> card. T. 471-72. Petitioner said that he wanted to talk to police, however, when asked whether he knew anything about the shooting on East Ferry Street, petitioner denied any knowledge of the incident. T. 473-474. He then told the officer that he wanted to "be alone . . . to think things over." T. 474. The detective left the interview room and returned approximately fifteen minutes later. The detective told petitioner that he had been positively identified as the shooter of Kirkland. T. 474-76. At that time, the detective asked if petitioner would submit to a gunshot residue test. Although petitioner initially assented, he refused to sign the consent form, stating "I only have one thing to say. It was self defense, and now I'm ready to go to my cell." T. 476-78.

### B. Direct Appeal

Petitioner appealed the judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department. <u>People v. Allen</u>, 30 A.D.3d 1106 (4th Dept. 2006); <u>lv. denied</u>, 7 N.Y.3d 809 (2006). On direct appeal, petitioner presented four issues: (1) the trial court erred in not suppressing the identification testimony; (2) the verdict was against the weight of

the evidence; (3) the court erred in not allowing petitioner to call a witness and denied petitioner the opportunity to testify on his own behalf; and (4) the sentence was harsh and excessive. <u>See</u> Respondent's Exhibits ("Ex.") B. Petitioner also filed a *pro se* brief, raising two additional claims: (1) the prosecution failed to disclose <u>Brady</u> material; and (2) the testimony of the victim's mother was prejudicial. Ex. B.

### C.    The Habeas Petition

Petitioner filed a timely habeas petitioner pursuant to 28 U.S.C. § 2254 with this Court, raising five of the six issues presented on direct appeal. (Dkt. #1). For the reasons that follow, the petition is denied and the action is dismissed.

## III. Discussion

### A.    General Principles Applicable to Federal Habeas Review

#### 1.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state

court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.   Merits of the Petition**

**1.   Impermissible Identification Testimony**

Petitioner first alleges that the trial court erred when it denied petitioner's suppression motion as to the station house identification made by Nicomy Welch. Petition ("Pet.") ¶ 22(A). The trial court, after a <u>Wade</u>[2] hearing on the issue, concluded that the show-up was accidental and denied suppression of the identification. <u>See</u> Hr'g Mins. dated 2/21/2003 at 28-29. The

---

[2] <u>United States v. Wade</u>, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

Appellate Division found that the record supported that the witness's station house viewing of petitioner "'was accidental, unarranged, not attributable to any misconduct on the part of police, and not unduly suggestive.'" People v. Allen, 30 A.D.3d 1106, 1107 (4th Dept. 2006) (quoting People v. Richardson, 212 A.D.2d 743 (2nd Dept. 1995)). Petitioner contends that the accidental show-up amounted to an improper identification procedure in violation of his constitutional rights. Pet. ¶ 22(A).

Due process prohibits the admission of identification testimony that both results from an "unnecessarily suggestive" procedure and, when viewed in the totality of circumstances, is unreliable. Stovall v. Denno, 388 U.S. 293, 301-302 (1967), overruled on other grounds by, Griffith v. Kentucky, 479 U.S. 314, 328 (1987); see also Simmons v. United States, 390 U.S. 377, 384 (1968) ("convictions based on eyewitness identification at trial following a pretrial identification . . . will be set aside on that ground only if the . . . procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.") For such testimony to be admissible, the trial court must conduct a two-step inquiry. See Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2002). First, the court must determine whether the identification procedure was unnecessarily suggestive. Raheem, 257 F.3d at 133. Second, if the court finds that the procedures were suggestive, it must then determine whether the

identification was "independently reliable." Id.  The factors to be considered in evaluating whether the identification was reliable include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) and the length of time  between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). If the procedures were not suggestive, however,  "no further inquiry by the court is required, and '[t]he reliability of properly admitted eyewitness identification, like the credibility of other parts of the prosecution's case is a matter for the jury.'" Raheem, 257 F.3d at 133. (citing Foster v. California, 394 U.S. 440, 442 n.2 (1969)).

Further, the Second Circuit has held that the show-up procedure, i.e., presenting a single suspect to an eyewitness for identification, is not inherently unconstitutional. See United States v. Bautista, 23 F.3d 726, 729-32 (2d Cir. 1994) (affirming admission of on-scene identification evidence and noting that "[t]he fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights did not render the pre-trial identification procedure unnecessarily suggestive"); United States v. Zelker, 455 F.2d 714, 716 (2d Cir. 1974) ("[P]rompt confrontation [is] desirable because it serve[s]

to insure the immediate release of an innocent suspect and at the same time enable[s] the police to resume the search for the fleeing culprit when the trail is fresh"). The instant case differs in that the trial court found that the station house show-up was unintentional.[3] Welch was taken into Police Headquarters to give a statement to police regarding the shooting. Shortly thereafter, she encountered petitioner in a vestibule accompanied by two officers. At the <u>Wade</u> hearing, the officer responsible for transporting Welch testified that he was unaware that the other officers had a suspect in that location, nor did he discuss the suspect's whereabouts with those officers. Welch was not asked to identify the petitioner, but rather brought it to the officers' attention that she had seen the shooter. Hr'g Mins. 10-12.

In this Circuit, district courts on habeas review have held that accidental show-ups do not constitute impermissibly suggestive identification procedures. <u>See</u> <u>Boles v. Senkowski</u>, 878 F.Supp.415, 422 (N.D.N.Y. 1995) (cases pertaining to station house show-ups are not controlling where a witness inadvertently saw suspect at the police station, no line-up or show-up occurred and the witness was not asked to identify that suspect); <u>Readdon v. Senkowski</u>, No. 96 CIV. 4722(JFK) 1998 WL 720682 at *3 (S.D.N.Y. Oct. 13, 1998) (a witness' accidental viewing of the suspect when he went to the

---

[3] In federal habeas corpus proceedings, the state court findings of fact are afforded a presumption of correctness, unless, *inter alia*, they are not fairly supported by the record. 28 U.S.C. § 2254(d); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1983).

precinct to give statement to police was not inadmissible identification testimony); <u>Nimmons v. Walker</u>, No. 92 Civ. 5782 (JFK) 1995 WL 373446 at *3 (S.D.N.Y. June 21, 1995) (holding that "[t]he trial record and hearing record amply support the position that petitioner's precinct house identification was not unduly suggestive. The police did not inform the complainant that a suspect had been apprehended, or that they wanted him to identify anyone. Moreover, the record demonstrates that the complainant proceeded to view Petitioner on his own accord, without any urging from the police. The spontaneity of the identification is indicative of its accuracy."); <u>Cf.</u> <u>Jackson v. Fogg</u>, 589 F.2d 108 (2d Cir. 1978) (finding precinct identifications were too suggestive when witnesses were specifically told to come to the station house to identify the suspect, police arranged to have eyewitnesses on-hand when the defendant was brought in, and defendant was either alone or with only one other person).

Assuming, *arguendo*, the accidental show-up was suggestive, Welch's identification was independently reliable from any possible suggestiveness. <u>See</u> <u>Styers v Smith</u>, 659 F.2d 293, 297 (2d Cir. 1981) ("Even grossly suggestive procedures will not require suppression of a witness' identification testimony if it is clearly reliable, independent of improper procedures.") Following the <u>Biggers</u> criteria, 409 U.S. at 199-200, a review of the record demonstrates that Welch's testimony was independently reliable.

First, Welch had adequate opportunity to view the perpetrator at the time of the crime. She observed petitioner jump from the van and run in her direction as he was firing shots at the victim. Welch further testified that the petitioner was about fifty feet away from her, and that it was a bright, sunny day, before the sun went down. T. 245. Second, with respect to her degree of attention, Welch recalled that she was focused on the "guy with the gun because . . . the only thing that caught my eye was his face, you know, shooting at [the victim]." T. 244. Third, Welch's description was accurate, save for a discrepancy in his clothing, in that the suspect's jeans were dark brown, and not "light" as Welch initially said. Her explanation for the disparity–that she was focused on the shooter's eyes, stature, and complexion, and that she described his clothing to her "best ability"–was found to be credible by the jury. T. 255-57, 301-308. Fourth, Welch demonstrated a very high level of certainty as to the identity of the shooter at the incident and at the police station. At trial, she repeatedly stated that she was "positive" of the shooter's identity, and that it was "a life and death situation. I could never forget a face in a situation like that." T. 291-308. Moreover, it was Welch who alerted police officers that she had observed the petitioner in handcuffs at the police station without provocation. Finally, Welch's identification of petitioner occurred approximately 20 to 30 minutes after the shooting. Hr'g Mins. 16;

See <u>United States v. Gonzalez</u>, 639 F.2d 844, 848 (2d Cir. 1980) (one hour lapse between observation of crime and identification was brief enough to support reliability of identification).

Moreover, the record in this case contains ample corroborating evidence of guilt. See <u>Vasquez v. Poole</u>, 331 F.Supp.2d 145, 157 (E.D.N.Y. 2004) (acknowledging a "sixth factor" test, which includes corroboration evidence as an appropriate factor to consider in deciding whether an identification is sufficiently reliable). The shooting was witnessed by four other individuals, including Peace, Hart, and two bystanders. Although they were unable to identify petitioner, they each testified that they observed the shooter leave the parking lot in a white minivan. Officer Sanford, while responding to the call reporting the shooting, followed the van that matched the description of the getaway vehicle, which was driven by petitioner. After a brief chase, petitioner attempted to flee on foot before he was apprehended, and then struggled while being placed under arrest. Significantly, petitioner gave an inculpatory statement to officers at the police station. Thus, in light of the totality of the circumstances, the identification was reliable despite an arguably suggestive identification procedure. <u>Biggers</u>, 409 U.S. at 199.

The "clearly established [f]ederal law," 28 U.S.C. § 2254(d)(1), at issue is whether an identification was "unnecessarily suggestive," <u>Stovall</u>, 388 U.S. at 302, and created

a "a very substantial likelihood of irreparable misidentification,"
Simmons, 390 U.S. at 384. In light of this standard, I find that
the decision of the Appellate Division was not contrary to, or an
unreasonable application of Supreme Court precedent.

## 2.   Weight of the Evidence

Petitioner contends, as he did on direct appeal, that the
verdict was against the weight of the evidence. Pet. ¶ 22(B);
Petitioner's ("Pet'r") Appellate Br. at 12. The respondent
correctly argues that weight of the evidence claims are not
cognizable in habeas corpus proceedings. Respondent's Mem. 14.
(Dkt. #5).

Challenges to the weight of the evidence supporting a
conviction, unlike challenges to the sufficiency of the evidence,
are not cognizable on federal habeas review. Maldonado v. Scully,
86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against
the weight of the evidence derives from New York Crim. Proc. Law
("C.P.L.") § 470.15(5), which permits an appellate court in New
York to reserve or modify a conviction where it determines "that a
verdict of conviction resulting in a judgment was, in whole or in
part, against the weight of the evidence." C.P.L. § 470.15(5).
Thus, the "weight of the evidence" argument is a pure state law
claim grounded in the criminal procedure statute, whereas a legal
sufficiency claim is based on federal due process principles.
People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of

the evidence claim is purely a matter of state law, it is not cognizable on habeas review. <u>See</u> U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")[4] As such, this claim is dismissed.

### 3.    Right to Present a Defense

Petitioner asserts that he was denied his right to present a defense because the trial court prevented him from recalling the prosecution's witness, Nicomy Welch, as his own witness. He further claims that the trial court prevented him from testifying at trial, in that petitioner's decision to testify hinged on the testimony of Welch, should she be re-called as a defense witness. Pet. ¶ 22(C). The Appellate Division concluded that petitioner's claim was without merit. <u>Allen</u>, 30 A.D.3d at 1107.

The record indicates that sometime after the trial began, defense counsel learned that Nicomy Welch previously went by the name "Nicomy Shine". T. 450-56. Believing that Welch had convictions under the alias "Shine", he requested additional time to confirm the alleged convictions with the intention of recalling

---

[4] Even if the Court were to view this claim as a "sufficiency of the evidence" claim, there is ample evidence in the record for a rational jury to determine that petitioner was guilty beyond a reasonable doubt, as discussed <u>supra</u> Part III.B.1. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

her to make an inquiry.[5] T. 458. Further, counsel wanted to question Welch as to whether she had been "pressured" into testifying for the prosecution. T. 446-60. Consequently, counsel delayed in deciding whether petitioner would testify at trial until he investigated Welch and questioned her on the stand. T. 447, 450.

The trial court told counsel that he had until the following day to find Welch and investigate whether she had any convictions under the name Shine, but required that petitioner would have to take the stand immediately, or he could not testify at all. T. 447-50, 548. In reply, counsel stated that, "regarding what [Welch] testifies to, then I may have to put my client on the stand, depending on what she says. I am not planning on putting my client on the stand unless I have to." T. 450. Defense counsel did not call petitioner to testify at trial. The following day, counsel called Welch as a witness, but she did not appear in court. T. 584-89. Counsel did not request more time to find her, nor did he make a request that petitioner testify. Rather, defense counsel requested a jury charge from the trial court that the fact that petitioner did not testify is not a factor from which any inference unfavorable to the defendant may be drawn. See C.P.L. § 300.10(2).

The Supreme Court has held that the right to present a defense is one of the "minimum essentials of a fair trial." Chambers v.

---

[5] During a bench conference, the trial court instructed the prosecutor to obtain a criminal printout for Nicomy Shine. That printout was provided to the court, and indicated no convictions. T. 549-50.

<u>Mississippi</u>, 410 U.S. 284, 294 (1973). Moreover, the compulsory process clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment secure the fundamental right of a defendant to present witnesses in his defense. <u>See</u> <u>Taylor v. Illinois</u>, 484 U.S. 400, 402 n. 1 (1988); <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (citations and quotations omitted)).

The right to compulsory process exists only where a defendant "make[s] some plausible showing of how [the desired witness'] testimony would have been both material and favorable to his defense." <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982). <u>See also</u> <u>Moates v. Scully</u>, No. 83 Civ. 490-CSH, 1985 WL 342 at *2 (S.D.N.Y. Feb. 25, 1985) (the "government's failure to compel the presence of witnesses whose testimony would be cumulative or 'not necessary to an adequate defense' does not violate Sixth Amendment rights") (quoting <u>United States v. Taylor</u>, 562 F.2d 1345 (2d Cir. 1977)); <u>accord, e.g.</u>, <u>United States v. Korodgodsky</u>, 4 F.Supp.2d 262, 268 (S.D.N.Y. 1998) (rejecting compulsory process claim where petitioner failed to show that the testimony sought from any desired witness would be either material or favorable to his defense); <u>Welch v. Artus</u>, No. 03-CV-865S, 2007 WL 962931 at *34

(W.D.N.Y. March 29, 2007) (same).

Petitioner has made no plausible showing with respect to the potential testimony of Nicomy Welch. It is clear from the record that defense counsel intended to call Welch to explore whether she had been pressured to testify at trial. However, he had already extensively cross-examined Welch on that particular issue. T. 298-301. As to the possibility of Welch's criminal convictions, the court instructed counsel that his questioning of Welch was limited to whether or not she had any criminal conviction, and that, "[i]f she has no conviction on a crime, then again you're precluded as indicated from examining further into that. You're bound by her answer. That's the law . . . . If it relates to credibility issues, you're bound." T. 459. The prosecutor provided criminal history printouts showing that no convictions existed for Nicomy Welch or Nicomy Shine. It is thus unlikely that any testimony Welch would have provided would have been necessary for petitioner's defense. The first part of petitioner's claim is therefore dismissed.

The second part of petitioner's claim, that he was denied his process right to testify in his own behalf, is similarly meritless. Specifically, petitioner argues that when faced with the option of testifying that day or not testifying at all, petitioner was "effectively precluded . . . from establishing a defense on his own behalf." Pet'r Appellate Br. 15. Petitioner essentially argues that the trial court should have interrupted the trial for a

continuance so that his attorney could determine whether or not petitioner would testify at trial.

Indeed, the right to testify in one's own behalf is a right that is "essential to due process of law in a fair adversary process." Rock v. Arkansas, 483 U.S. 44, 51 (1987) (quotation omitted). It is also well-established, however, that a trial judge must be accorded great latitude in scheduling trials. Morris v. Slappy, 461 U.S. 1, 11 (1983); see, e.g., Taylor v. Illinois, 484 U.S. 400, 414-15 (1988). "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Grotto v. Herbert, 316 F.3d 198, 206 (2d Cir 2003) (citing Avery v. Alabama, 308 U.S. 444 (1940)). The denial of a continuance violates an accused's constitutional rights only where there has been an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (quoting Morris, 461 U.S. at 12). The record does not indicate that the trial court acted unreasonably or arbitrarily in its ruling. Rather, the trial court refused to allow further delay, reasoning that there had been several adjournments for various reasons spanning five months, and concluded that counsel had adequate time to determine whether petitioner would take the witness stand.  T.

449-50.  Significantly, nowhere does petitioner claim that he in fact desired to testify at trial, nor does he explain what he would have testified to.  Petitioner has thus not set forth sufficient facts to support a finding that the lack of adjournment impinged upon his right to testify on his own behalf.  Jones v. Conway, 442 F.Supp.2d 113, 129 (S.D.N.Y. 2006).

Accordingly, the Appellate Division did not contravene clearly established Federal law in denying petitioner's Sixth Amendment and Fourteenth Amendment claims.

### 4.  **Brady** Violation

In ground four of his petition, petitioner alleges that the prosecutor failed to disclose Nicomy Welch's criminal record in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Pet. at Attach. 8(a). The Appellate Division found that, "[t]here is no indication that she had been convicted of any crime or that any criminal action was pending against her and thus it cannot be said that the prosecutor had knowledge of any such conviction or pending criminal action." Allen, 30 A.D.3d at 1107.

The Supreme Court in Brady held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87. There are three elements to a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1995).

The Court finds that the alleged information does not constitute Brady material. The record indicates that no convictions existed for Nicomy Welch. In an exercise of caution, the trial court directed the prosecutor to obtain a criminal history search on the witness' alias, Nicomy Shine.  The result of that search similarly showed no convictions. See discussion supra at III.B.3. As a result, the Court finds that petitioner's claim lacks foundation, and the Appellate Division did not unreasonably apply Supreme Court precedent.

### 5. Erroneously Admitted Testimony

In his final claim for relief, petitioner asserts that the trial court erred in admitting prejudicial testimony from the victim's mother, Ameena Azeem ("Azeem"). Pet. at Attach. 8(b). Specifically, he alleges that the testimony was "constitutionally impermissible" because it "solicit[ed] sympathy and compassion from the jury."  The Appellate Division rejected petitioner's claim as meritless. Allen, 30 A.D.3d at 1107.

At trial, Azeem testified that after her son had been shot in

the head, he spent one and a half months in the hospital, and was not expected to live. After his release, the victim suffered three seizures, had difficulty with speech and comprehension, and needed assistance with day-to-day activities. T. 34-45. The trial court sustained counsel's hearsay objection on the ground that Azeem was testifying to observations she made as the victim's primary caretaker. T. 39.

On the outset, the Court notes that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. at 67-68; accord Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates the fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3 at 125 (2d Cir. 1998). Thus, even where the state court ruling was erroneous, habeas relief is not available unless the error resulted in a trial that "deprive[d] the defendant of fundamental fairness," thereby violating due process rights guaranteed by the federal constitution. Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1998).

It is well-established law in New York that the balancing of probative value against potential prejudice is entrusted to the

trial court's discretion. <u>People v. Gillyard</u>, 13 N.Y.3d 351 (2009)
(citing <u>People v. Ventimiglia</u>, 52 N.Y.2d 350, 359-360 (1981). The
testimony of Azeem was elicited to establish the effect of his
injuries to the jury, which is relevant to an element of assault in
the first degree, i.e., serious physical injury. <u>See</u> Penal L. §
120.10[1]. The trial court, therefore, did not err in exercising
that discretion, and thus did not violate a state evidentiary rule.
The Appellate Division found the same. Consequently, there was no
error of constitutional magnitude. <u>Rodriguez v. Superintendent,
Collins Corr. Facility</u>, 549 F.Supp.2d 226, 244-45 (N.D.N.Y. 2008);
<u>see also</u> <u>Jamison v. Grier</u>, 01 Civ. 6678, 2002 WL 100642 at *17
(S.D.N.Y. Jan. 25, 2002) (Peck, M.J.) (the state trial court's
admission of certain demonstrative evidence was "not an abuse of
discretion and thus not an error of state law, much less an error
of constitutional magnitude."); <u>Rashid v. Kuhlman</u>, 97 Civ. 3037,
2000 WL 1855114 at *13 (S.D.N.Y. Dec. 19, 2000) (A "trial court's
decision to admit evidence of uncharged crimes is a matter of
discretion."); <u>Rojas v. Senkowski</u>, No. CV-95-1866, 1996 WL 449321
at *5 (E.D.N.Y. July 29, 1996) ("The [state] trial court was
entirely justified in finding that the probative value [of the
evidence] outweighed any prejudice, and the decision was well
within the judge's discretion. Thus there was no error of
constitutional magnitude in the trial court's ruling that would
warrant granting petitioner's habeas corpus petition on this

ground.") (citation omitted)

This claim does not provide a basis for habeas relief, and is therefore dismissed.

## IV. Conclusion

For the reasons stated above, Micaiah Allen's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

        **SO ORDERED.**

                                        s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                    United States District Judge

Dated:      March 1, 2010
            Rochester, New York